ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| Natalio García Arroyo | | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce |
|---|---|---|
| Apelado | | |
| v. | KLAN202300713 | Civil núm.: JDP2015-0429 |
| Sucesión de Hipólito Vázquez Saldaña y otros | | |
| Apelantes | | Sobre: Daños y Perjuicios |

Panel integrado por su presidenta la juez Ortiz Flores, la jueza Rivera Pérez y el juez Campos Pérez[1]

Campos Pérez, Juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 19 de diciembre de 2024.

Comparece ante nos la Sra. Karelys M. Vázquez Ortiz, la sucesión del Sr. Hipólito Vázquez Saldaña y de la Sra. Sonia Torres Vázquez compuesta por el Sr. Pablo Antonio Vázquez Torres, la Sra. Sonia Beatriz Vázquez Torres, la Sra. Giselle del Rosario Vázquez Torres y el Sr. Hipólito Vázquez Torres conjunto a su esposa la Sra. Mayra E. Ortiz Colón en su carácter personal y en representación de la sociedad legal de gananciales compuesta por ambos, mediante el presente recurso de *Apelación* y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ponce (TPI), el 20 de junio de 2023 y notificado el 23 de junio del mismo año. En aludido escrito, el foro primario declaró **Con Lugar** la demanda en daños y perjuicios presentada por el Sr. Natalio García Arroyo y declaró **No Ha Lugar** a la reconvención presentada por la parte demandada.

Por los fundamentos que expondremos a continuación, confirmamos la *Sentencia* emitida.

---

[1] Mediante Orden Administrativa TA-2023-212 del 6 de diciembre de 2023 se designa al Hon. José I. Campos Pérez en sustitución del Hon. Waldemar Rivera Torres.

Número Identificador

SEN2024_____

**I.**

El 23 de septiembre de 2015 el Sr. Natalio García Arroyo presentó ante el TPI una Demanda en daños y perjuicios contra el fenecido Sr. Vázquez Saldaña, su presunta esposa "Fulana de Tal" y para ese entonces la menor Karelys M. Vázquez Ortiz.[2] En síntesis, alegó que el 4 de mayo de 2015 mientras se encontraba manejando su vehículo Mitsubishi Mirage del 1995 por la Avenida Eduardo Ruberté, de norte a sur, al llegar a la intersección con la carretera Ramal #2 fue impactado en su lado izquierdo frontal por el vehículo que conducía la entonces menor Karelys M. Vázquez Ortiz quien se dirigía en dirección Oeste a Este en el vehículo propiedad del demandado Sr. Hipólito Vázquez Saldaña.[3] Que debido a este choque sufrió traumas en la cabeza y dolor incontenible en la espalda, genitales, ambas rodillas, mano y muñeca izquierda, antebrazo y codo derecho, por lo que solicita un resarcimiento por la incapacidad física y los sufrimientos físicos y emocionales causados por el accidente ascendiendo a una cantidad mayor de $50,000.00 dólares.[4]

Luego de unos incidentes procesales, incluyendo el cuestionamiento sobre el emplazamiento[5], la parte demandada compuesta por la entonces menor Karelys M. Vázquez Ortiz y su padre, Sr. Hipólito Vázquez Torres, presentaron su *Contestación a demanda y reconvención* el 3 de marzo de 2016.[6] En resumen, negaron que la co-demandada hubiese ocasionado el accidente y expresaron que fue el demandante el que impactó con su parte frontal la parte trasera del vehículo de la co-demandada.[7] En este escrito no presentaron defensas afirmativas, pero en su

---

[2] Apéndice de la parte demandada-apelante, en el Anejo 5 págs. 81-84.
[3] *Íd.*
[4] *Íd.*
[5] Apéndice de la parte demandada-apelante, en el Anejo 6 págs. 85-94.
[6] Apéndice de la parte demandada-apelante, en el Anejo 7 págs. 95-98.
[7] *Íd.*

reconvención arguyeron que debido a la total y absoluta negligencia del Sr. Natalio García Arroyo al no detenerse ante la luz roja del semáforo aun cuando habían vehículos transitando y causa el accidente.[8] Que a raíz de dicho acto negligente solicitaban el resarcimiento estimado en $20,000.00 dólares.[9]

Luego, el 11 de abril de 2016, el demandante presentó una *Demanda enmendada.*[10] En síntesis, mantuvo sus alegaciones similares a las presentadas en la demanda original, pero añadió como parte demandada al Sr. Hipólito Vázquez Torres y a su esposa "Fulana de Tal" en su carácter personal y en representación de la sociedad legal de gananciales compuesta por él y su esposa y en carácter de padre con patria potestad de la entonces menor Karelys M. Vázquez Ortiz.[11]

Por su parte, el 9 de enero de 2017, la parte demandada presentó una *Contestación enmendada a demanda enmendada y reconvención enmendada.*[12] En el aludido escrito retomaron las alegaciones y respuesta hechas en la contestación a la demanda y reconvención original.[13]

El 23 de enero de 2017, el demandante presentó su *Contestación a reconvención enmendada.*[14] En dicho escrito, el demandante negó las alegaciones hechas por la parte demandada pues arguyó que el accidente se debió a las actuaciones negligentes de la entonces menor Karelys M. Vázquez Ortiz y levantó sus defensas afirmativas.[15]

Por otro lado, el 18 de junio de 2018, el demandante presentó una *Segunda demanda enmendada.*[16] En síntesis, el demandante

---

[8] *Íd.*
[9] *Íd.*
[10] Apéndice de la parte demandada-apelante, en el Anejo 8 págs. 99-102.
[11] *Íd.*
[12] Apéndice de la parte demandada-apelante, en el Anejo 9 págs. 103-106.
[13] *Íd.*
[14] Apéndice de la parte demandada-apelante, en el Anejo 10 págs. 107-109.
[15] *Íd.*
[16] Apéndice de la parte demandada-apelante, en el Anejo 11 págs. 110-114.

enmendó sus alegaciones para añadir a la sucesión del fenecido Sr. Hipólito Vázquez Saldaña, es decir el Sr. Hipólito Vázquez Torres, el Sr. Pablo Antonio Vázquez Torres, la Sra. Sonia Beatriz Vázquez Torres, la Sra. Griselle del Rosario Vázquez Torres y la esposa del fenecido, Sra. Sonia Torres Vázquez, como parte demandada en el pleito.[17]

Así las cosas, la parte demanda presentó el 29 de noviembre de 2018 su *Contestación a segunda demanda enmendada,* en la cual por primera vez levantan defensas afirmativas y reclaman en su reconvención enmendada la partida de $5,000.00 dólares para cada integrante por las angustias y sufrimientos mentales que le causo el pleito presentado en su contra.[18]

El 18 de diciembre de 2018, el Sr. Natalio García Arroyo presentó su *Contestación a reconvención enmendada,* donde levantó, entre otras defensas afirmativas, que nuestro ordenamiento jurídico no reconoce la existencia de una acción civil en daños y perjuicios como consecuencia de la presentación de un pleito civil.[19]

Luego, el 20 de agosto de 2021, el demandante presentó ante el TPI una *Tercera demanda enmendada* para añadir como parte demandada la sucesión de la fenecida Sra. Sonia Torres Vázquez.[20]

Por su parte, la parte demandada presentó el 29 de septiembre de 2021 su *Contestación a tercera demanda enmendada.*[21]

Luego de varios trámites procesales, el 16 de diciembre de 2022 y notificada el 19 del mismo mes y año, el TPI emitió una *Resolución* en la cual atiende una controversia respecto a cómo debía marcarse la prueba médica, cuya autenticidad fue

---

[17] *Íd.*
[18] Apéndice de la parte demandada-apelante, en el Anejo 13 págs. 120-124.
[19] Apéndice de la parte demandada-apelante, en el Anejo 15 págs. 130-132.
[20] Apéndice de la parte demandada-apelante, en el Anejo 16 págs. 133-137.
[21] Apéndice de la parte demandada-apelante, en el Anejo 17 págs. 138-142.

estipulada.[22] El foro primario concluyó que, a la falta de acuerdo entre las partes sobre la autenticidad de su contenido, la prueba sería marcada como identificación y no como "*exhibit*".[23]

Días antes del juicio en su fondo, el 10 de abril de 2023 y notificado el 11 de abril de 2023, TPI emitió otra *Resolución* respecto a una controversia que surgió sobre el testimonio del Dr. José A. Martinó Valdés y el récord médico por el cual iba a testificar.[24] El foro primario concluyó que procedía presentar la deposición realizada al fenecido Dr. José A. Martinó Valdés en sustitución del testimonio que iba a ser presentado debido a su muerte.[25]

El 17, 18, 19, 20 y 21 de abril de 2023 se celebró el juicio en su fondo.

A continuación, resumimos los testimonios vertidos por seis de los testigos del demandante para un mejor entendimiento de los hechos.

### Señor Natalio García Arroyo (demandante)

El demandante comenzó narrando que tiene setenta años de edad y que desde el 2008 vive en Puerto Rico.[26] Que le concedieron el Seguro Social en el 2008 por problemas con sus discos.[27] Testificó que antes del 4 de mayo de 2015 su condición era estable, que solamente tenía diabetes.[28] Relató que el 4 de mayo de 2015 fue a la farmacia junto a su amigo, el Sr. Pedro Collazo Báez, para buscar un medicamento para su nieto, en su vehículo Mitsubishi Mirage del 1995.[29] Que cuando cursaba la Avenida Ruberté, en dirección Norte a sur paró en la intermitente porque la luz se encontraba roja y esperó a que cambiara la luz junto a una guagua cerrada que se

---

[22] Apéndice de la parte demandada-apelante, en el Anejo 21 págs. 251-256.
[23] *Íd.*
[24] Apéndice de la parte demandada-apelante, en el Anejo 22 págs. 257-263.
[25] *Íd.*
[26] Transcripción de la Prueba Oral, en adelante TPO, del 17 de abril de 2023 en las págs. 31-35.
[27] TPO del 17 de abril de 2023 en la pág. 38.
[28] TPO del 17 de abril de 2023 en la pág. 41.
[29] TPO del 17 de abril de 2023 en las págs. 41-46.

encontraba a su izquierda.[30] El demandante atestiguó que cuando la luz cambió a verde salió en marcha junto a la guagua cerrada y recibe el impacto del vehículo que estaba manejando la entonces menor Karelys Vázquez Ortiz, quien se encontraba transitando de este a oeste.[31] Debido al choque, su vehículo giró y él recibió golpes en la cabeza, rodilla y tuvo sangrado.[32] El Sr. Natalio García Arroyo atestiguó que llego la ambulancia, le pusieron una "cuellera", lo limpiaron y lo transportaron al Hospital de Damas.[33] En el hospital le realizaron pruebas, entre ellas un *CT Scan* de su cabeza y columna vertebral, en el cual le comunicaron que tenía "damage" en su columna vertebral por tal razón lo trasladaron al Centro Médico en Rio Piedras donde fue dado de alta el 6 de mayo de 2015.[34] El Sr. Natalio García Arroyo testificó que cuando fue dado de alta sentía mucho dolor en la espalda baja, extremidades y rodillas, entre otros.[35] Luego de esto, se dirigió a la Administración de Compensaciones por Accidentes de Automóviles (ACAA) donde fue referido a la Dr.a Mónica Portalatín quien le recetó Tramadol, Percocet y le recomendó que para manejar su dolor, descansara, utilizara bolsas de hielo y que utilizara una faja.[36] Declaró que la Dra. Mónica Portalatín lo refirió al doctor Serra por los dolores que estaba experimentando en su área lumbar, y este le realizó terapias de bolsas calientes "electro shock" y de acupuntura.[37] El demandante testificó que a pesar de las terapias recibidas su situación de salud no mejoró, por lo que acudió al Dr. José Martinó Valdez, con el que se sometió a una tratamiento de bloqueo.[38] El Dr. José Martinó Valdez lo refirió al Dr. Reinaldo De Jesús, en el

---

[30] TPO del 17 de abril de 2023 en las págs. 47-48.
[31] TPO del 17 de abril de 2023 en las págs. 59-61.
[32] TPO del 17 de abril verde 2023 en la pág. 63.
[33] TPO del 17 de abril de 2023 en las págs. 63-69.
[34] TPO del 17 de abril de 2023 en las págs. 69-75.
[35] TPO del 17 de abril de 2023 en las págs. 81-82.
[36] TPO del 17 de abril de 2023 en las págs. 83-85.
[37] TPO del 17 de abril de 2023 en las págs. 87-89.
[38] TPO del 17 de abril de 2023 en las págs. 150-152.

cual le recomendaron realizarse una operación la cual decidió no hacerse.[39] Luego acudió al Dr. Carlos Colón por el dolor de espalda y rodilla que tenía desde el accidente, este le realizó una operación en la rodilla pues tenía "el menisco estillao".[40]

En el contrainterrogatorio, el demandante testificó que no sabe del paradero de su acompañante del día del accidente, Sr. Pedro Collazo Báez pues su hija se lo llevó y por tal razón no ha podido comunicarse con él.[41] Que no se comunicó con nadie involucrado en el accidente, y no recordaba si la entonces menor Karelys Vázquez Ortiz se encontraba acompañada o sola en el momento del accidente.[42] Atestiguó, además, que habían cuatro semáforos y habían dos carriles en la zona del accidente en donde estaba transitando.[43] Que la avenida por donde transitaba el día del accidente era una en la cual solía pasar siempre.[44] Testificó, además, que no recuerda si frente a la entonces menor Karelys Vázquez Ortiz habían más vehículos.[45]

Respecto a su solicitud de Seguro Social, atestiguó que reportó las dolencias que sentía y que tenía "discos herniados".[46] Que no recuerda haber reportado al Seguro Social que había sufrido un accidente de tránsito.[47] Testificó que no reportó a los médicos que lo atendieron por razón del accidente los síntomas por los cuales le otorgaron el Seguro Social.[48] Que después del accidente empezó a sentir dolor en las rodillas.[49]

---

[39] TPO del 17 de abril de 2023 en las págs. 153-155.
[40] TPO del 17 de abril de 2023 en las págs. 156-159.
[41] TPO del 17 de abril de 2023 en las págs. 286-287.
[42] TPO del 17 de abril de 2023 en las págs. 288-289.
[43] TPO del 17 de abril de 2023 en las págs. 290-292.
[44] TPO del 17 de abril de 2023 en la pág. 296.
[45] TPO del 17 de abril de 2023 en la pág. 300.
[46] TPO del 17 de abril de 2023 en las págs. 310-314.
[47] TPO del 17 de abril de 2023 en la pág. 314.
[48] TPO del 17 de abril de 2023 en la pág. 332.
[49] TPO del 17 de abril de 2023 en las págs. 335-336.

### *Dr. Reinaldo De Jesús Rodríguez*

El Dr. Reinaldo De Jesús Rodríguez comenzó a testificar que es neurocirujano de profesión y conoce al demandante porque acudió como paciente a su oficina.[50] Que el demandante le comentó que tenía dolor profundo de cuello, espalda, piernas, hombros y brazos.[51] Testificó, además, que de su expediente surge que el demandante tuvo un accidente en agosto de 2015.[52] Que de los resultados de un MRI del cuello, este pudo observar que el Sr. Natalio García Arroyo tenía degeneración y pequeñas hernias con osteofitos.[53] Mientras que el MRI del área lumbar mostró discos herniados con osteofitos complejos en L4-L5 y L5-S1 con estenosis foraminal.[54] Que debido a este cuadro le recomendó al demandante revaluarse con un fisiatra y realizarse otras pruebas.[55] En la segunda cita, el demandante continuaba manifestando tener dolor y al evaluar la impresión de la electromiografía hecha por el Dr. Javier Serra llega al conocimiento de que el demandante tiene radiculopatía C7 bilateral leve y radiculopatía bilateral leve S1 y neuropatía sensorial axional.[56] Debido a este cuadro clínico el Dr. Reinaldo De Jesús Rodríguez testificó que recomendó al demandante realizarse una intervención cervical del cuello llamada "*Anterior cervical discectomy with fusion instrumentation*".[57] A pesar de haberle explicado el procedimiento y sus riesgos, el Sr. Natalio García Arroyo nunca volvió a su oficina.[58]

En el contrainterrogatorio, atestiguó que desconocía cuantos accidentes automovilísticos había tenido.[59] De igual forma, testifico

---

[50] TPO del 17 de abril de 2023 en las págs. 114-117.
[51] TPO del 17 de abril de 2023 en la pág. 124.
[52] TPO del 17 de abril de 2023 en las págs. 128-131.
[53] TPO del 17 de abril de 2023 en la pág. 134.
[54] *Íd.*
[55] TPO del 17 de abril de 2023 en la pág. 135.
[56] TPO del 17 de abril de 2023 en la pág. 138.
[57] TPO del 17 de abril de 2023 en la pág. 139.
[58] TPO del 17 de abril de 2023 en las págs. 139-143.
[59] TPO del 17 de abril de 2023 en la pág. 145.

que el demandante le comentó que sentía dolor desde el accidente y no tiene constancia de dolores anteriores al accidente.[60]

### Dra. Mónica Portalatín

La Dra. Mónica Portalatín comenzó expresando que posee un Doctorado en medicina general.[61] Testificó que conoce al demandante pues fue su paciente debido a un accidente de auto y este se quejó de dolor en espalda, cuello, hombro izquierdo y posible fractura lumbar.[62] El hallazgo del 11 de mayo de 2015 es de dolor espalda, cuello, hombro izquierdo y espasmo muscular, se le diagnosticó lumbago y cervicalgia, y se le recetó Ultracet, que es para el dolor, y Flexeril, que es un relajante muscular.[63] La doctora pudo corroborar que no tenía una fractura lumbar.[64] Por otro lado, pudo corroborar que el demandante tiene discos herniados y se le diagnosticó lumbago, espondilolistesis y espasmos musculares.[65] Como parte del tratamiento recomendado se le explicó que debía utilizar hielo, descanso, utilizar una faja para la área lumbar con una receta de Norflex y Neurontin.[66] Por último lo refirió a un fisiatra para que evaluara el caso y recibiera recomendaciones.[67]

Bajo las preguntas del contrainterrogatorio, la Dra. Mónica Portalatín testificó que el Sr. Natalio García Arroyo llegó a su oficina pues es paciente de ACAA.[68] Que bajo su participación, el demandante no realizó alguna queja sobre su rodilla.[69]

### Dra. Digna Rivera Roldán

La Dra. Digna Rivera Roldán comenzó testificando que es doctora generalista y que conoce al demandante pues es paciente de

---

[60] *Íd.*
[61] TPO del 17 de abril de 2023 en la pág. 175.
[62] TPO del 17 de abril de 2023 en las págs. 175-180.
[63] TPO del 17 de abril de 2023 en las págs. 184-186.
[64] TPO del 17 de abril de 2023 en la pág. 189.
[65] TPO del 17 de abril de 2023 en las págs. 191-192.
[66] TPO del 17 de abril de 2023 en las págs. 193-194.
[67] TPO del 17 de abril de 2023 en la pág. 195.
[68] TPO del 17 de abril de 2023 en la pág. 197.
[69] TPO del 17 de abril de 2023 en la pág. 200.

ella.[70] Atestiguó que las condiciones que ella ha atendido del Sr. Natalio García Arroyo han sido diabetes melitos 2, presión arterial, discos herniados, obesidad, colesterol alto, hernia inguinal minoscrotal, dolor de espalda, cervicalgia, entre otros.[71] Que luego del 2015 comenzó a comunicarle que tenía dolor en el cuello para enero de 2016.[72] El 14 de septiembre de 2015, en su tercera cita con la doctora ese año le comentó que había tenido un accidente el 4 de mayo del mismo año, le dejo saber de una fractura lumbar L5 que iba ser revaluada y que se encontraba tomando terapia física con el Dr. Serra.[73] Para ese mes emitió el ~~diagnostico~~ diagnóstico, entre otros, de "*bulging disc*".[74] En octubre de 2015, volvió a ver al demandante y este le expresó que los dolores de espalda que estaba experimentando eran más intensos luego del accidente.[75] Para el mes de enero de 2016 el Sr. Natalio García Arroyo se quejó de dolor de cuello y expresó que sonaba cuando lo movía.[76] En el mes de marzo de 2016 le expresó que le dolía la rodilla y el cuello, por lo que hizo un diagnóstico de dolor de rodilla derecha.[77] Para el mes de septiembre de 2016 volvió a expresar que le dolía la rodilla y le ordenó que se pusiera compresas tibias en el área de la rodilla.[78]

En el contrainterrogatorio testificó que empezó a atender a Natalio García Arroyo desde el año 2011 y que para tal momento no presentó evidencia documental de la hernia en la espalda y sobre la rodilla no recuerda.[79] Tenía conocimiento que el demandante había sido incapacitado en el Seguro Social.[80] No recuerda si el demandante le hubiese expresado que ha sufrido algún accidente

---

[70] TPO del 17 de abril de 2023 en las págs. 210-211.
[71] TPO del 17 de abril de 2023 en las págs. 212-213.
[72] TPO del 17 de abril de 2023 en las págs. 213-214.
[73] TPO del 17 de abril de 2023 en las págs. 242-247.
[74] TPO del 17 de abril de 2023 en la pág. 249.
[75] TPO del 17 de abril de 2023 en la pág. 259.
[76] TPO del 17 de abril de 2023 en la pág. 261.
[77] TPO del 17 de abril de 2023 en las págs. 265-266.
[78] TPO del 17 de abril de 2023 en las págs. 271-272.
[79] TPO del 17 de abril de 2023 en las págs. 275-276.
[80] TPO del 17 de abril de 2023 en la pág. 277.

automovilístico antes del 2015.[81] Atestiguó, además, que no refirió al demandante al neurocirujano ni al fisiatra, que eso fue ACAA.[82] Que vio el récord de Sala de Emergencias del Hospital de Damas, pero no el récord de Centro Médico.[83]

### Señor Andrew Rodríguez Feliciano

El Sr. Andrew Rodríguez Feliciano comenzó testificando que no conoce a ninguna de las partes del pleito.[84] Que el 4 de mayo de 2015 iba de camino a la universidad, de Añasco hacia Ponce y se detuvo en el camino por una luz roja.[85] Mientras estaba detenido en la luz roja tenía un vehículo a su izquierda, pero no vio ningún otro vehículo transitando mientras estaba detenido.[86] El Sr. Andrew Rodríguez Feliciano atestiguó que vio salir un vehículo de su lado derecho y cuando iba por la mitad de la intersección vino una guagua de la parte izquierda y choca el vehículo en el medio de la intersección.[87] Que a raíz de este impacto la guagua se dirigió hacia el vehículo que estaba a su lado izquierdo rosando con este y terminando el impacto con el vehículo que estaba conduciendo.[88] Declaró que el carro que recibió el primer impacto fue el vehículo que salió de su lado derecho.[89] Que no recuerda el color del vehículo que recibió el primer impacto.[90]

En preguntas del contrainterrogatorio testificó que tenía veintiún años para el 2015.[91] Recuerda que había tres carros envueltos en el accidente.[92]

---

[81] TPO del 17 de abril de 2023 en la pág. 279.
[82] TPO del 17 de abril de 2023 en las págs. 279-280.
[83] TPO del 17 de abril de 2023 en las págs. 280-281.
[84] TPO del 18 de abril de 2023 en la pág. 63.
[85] TPO del 18 de abril de 2023 en la pág. 65.
[86] TPO del 18 de abril de 2023 en la pág. 69.
[87] TPO del 18 de abril de 2023 en las págs. 69-70.
[88] *Íd.*
[89] *Íd.*
[90] TPO del 18 de abril de 2023 en las págs. 82-83.
[91] TPO del 18 de abril de 2023 en la pág. 95.
[92] TPO del 18 de abril de 2023 en la pág. 96.

**_Dr. José Raúl Ortiz Rubio (Perito de la parte demandante)_**

El Dr. José Raúl Ortiz Rubio comenzó testificando que es médico de profesión con especialidad en medicina ocupacional dedicándose en medir incapacidad.[93] Atestiguó que su cliente principal suele ser el Gobierno de Puerto Rico desde el 1993 hasta el presente.[94] Que no ha sido descalificado por algún tribunal por brindar su testimonio pericial y que ha comparecido a los tribunales para determinar relación causal e impedimento.[95] Declaró, además, que el Tribunal Examinador de Médicos le confirió el título "*Board Certified*" en medicina ocupacional y tiene cursos de "ABIME" *American Board Independent Medical Evaluation.*[96] Testificó que su determinación pericial estriba en un impedimento y a causa ~~de qué~~ de un accidente.[97]

Atestiguó, que hizo una evaluación del caso siguiendo las guías de determinación de impedimento con los expedientes que le fueron entregados y llegó a la conclusión, en su informe pericial, de que a raíz del accidente ocurrido el 4 de mayo de 2015 el Sr. Natalio García Arroyo acumuló un cinco por ciento de impedimento de sus funciones fisiológicas de carácter permanente.[98]

Que la metodología utilizada para llegar a esta conclusión consistió en un estudio retrospectivo, desde los documentos relacionados a la reclamación del Seguro Social en el 2008 incluyendo los expedientes de los doctores que han atendido al Sr. Natalio García Arroyo luego del 4 de mayo de 2015 y los expedientes del Hospital de Damas y de Centro Médico.[99] Declaró, además, que utilizó los principios documentados o exigidos por las guías de evaluaciones de elemento permanente que consiste en

---

[93] TPO del 19 de abril de 2023 en las págs. 23-35.
[94] TPO del 19 de abril de 2023 en la pág. 29.
[95] TPO del 19 de abril de 2023 en las págs. 32-33.
[96] *Íd.*
[97] TPO del 19 de abril de 2023 en las págs. 42-43.
[98] TPO del 19 de abril de 2023 en las págs. 46-47.
[99] TPO del 19 de abril de 2023 en las págs. 51-55.

entrevistar al lesionado, realizar unas preguntas y un examen físico enfocándose en los daños que alega ocurrieron por el accidente y compararlo con los récords médicos que fueron sometidos para ir determinando el valor y peso.[100] Que el 8 de agosto de 2017 se reunió con el demandante para evaluarlo y que ha tenido otras reuniones con él.[101] Al declarar sobre lo que el demandante le contó al galeno del accidente del 4 de mayo de 2015, este testificó que basado en el giro o "spinning" que dio el demandante a raíz de la colación se basan los daños y podían calcularse.[102]

Luego de hacer un recuento de algunos de los tratamientos e intervenciones realizadas al Sr. Natalio García Arroyo[103], testificó que las condiciones previas que tenía el demandante se agravaron a raíz del "spinning" causado por el accidente.[104]

El Dr. José Raúl Rubio testificó que, al combinar, utilizando la Sexta Edición para la determinación de impedimento permanente, y tomando en consideración el historial previo, llegó a la conclusión de cinco porciento de impedimento en todas sus funciones fisiológicas generales permanente.[105]

Respecto a las rodillas del Sr. Natalio García Arroyo, el perito atestiguó que examinó los récords médicos hechos por la Dra. Portalatín y el Dr. Carlos Colón.[106] Que para el 1 de mayo de 2017 fue intervenido quirúrgicamente por el Dr. Carlos Colón donde le realizaron una artroscopía derecha de carácter ambulatorio.[107] Que la Dra. Digna Rivera Roldán refirió al demandante al Dr. Carlos Colón por dolor crónico y recurrente en la rodilla y este lo atendió.[108]

---

[100] TPO del 19 de abril de 2023 en las págs. 56-57.
[101] TPO del 19 de abril de 2023 en las págs. 60-61.
[102] TPO del 19 de abril de 2023 en las págs. 64-65.
[103] TPO del 19 de abril de 2023 en las págs. 70-80.
[104] TPO del 19 de abril de 2023 en las págs. 81-85.
[105] TPO del 19 de abril de 2023 en las págs. 204-209.
[106] TPO del 19 de abril de 2023 en la pág. 102.
[107] TPO del 19 de abril de 2023 en las págs. 139-144.
[108] TPO del 19 de abril de 2023 en las págs. 145-152.

En el contrainterrogatorio, testificó que se llegó a esa conclusión de cinco porciento de incapacidad por razón del accidente pues se evidenciaron espasmos musculares y se documentaron tratamientos.[109]

Respecto a la parte demandada, resumimos los testimonios vertidos por dos de los testigos para un mejor entendimiento de los hechos.

### *Sra. Karelys Vázquez Ortiz (demandada)*

La Sra. Karelys Vázquez Ortiz comenzó declarando que en la actualidad tiene veintiséis años, pero para el año 2015 tenía 18 años de edad.[110] Que el 4 de mayo de 2015 ocurrió un accidente aproximadamente a las 5:30 de la tarde.[111] Declaró que ese día se encontraba con su hermana en casa de sus abuelos en la Urbanización Perla del Sur y se dirigió a un supermercado, pasó por el redondel, hizo una izquierda y siguió el flujo de tráfico normal.[112] Que estaba manejando una Ford Explorer blanca del 2010.[113] Atestiguó que al llegar a la intersección de la Ramal-2 siguió el flujo vehicular, pasó el semáforo y tres carriles cuando sintió un impacto que provocó que su guagua se desplazara e impactará otros vehículos que estaban de frente.[114] La Sra. Karelys Vázquez Ortiz testificó que la luz se encontraba verde cuando transitaba.[115] Que los agentes de la policía no la entrevistaron a ella ni a su hermana.[116] Declaró que no habló con el demandante hasta después del accidente para preguntar si se había comunicado con el seguro.[117] Que a raíz del accidente no tuvo ninguna lesión física, ni ha recibido ningún tratamiento psicológico.[118] Testificó que a raíz del accidente

---

[109] TPO del 19 de abril de 2023 en la pág. 292.
[110] TPO del 20 de abril de 2023 en las págs. 130-131.
[111] TPO del 20 de abril de 2023 en las págs. 131-132.
[112] TPO del 20 de abril de 2023 en las págs. 132-133.
[113] TPO del 20 de abril de 2023 en la pág. 134.
[114] TPO del 20 de abril de 2023 en la pág. 135.
[115] TPO del 20 de abril de 2023 en la pág. 136.
[116] TPO del 20 de abril de 2023 en las págs. 136-137.
[117] TPO del 20 de abril de 2023 en las págs. 138-139.
[118] TPO del 20 de abril de 2023 en la pág. 139.

su familia se ha visto afectada, especialmente a su padre que lleva ocho años pagando el servicio de un abogado.[119]

A preguntas del contrainterrogatorio declaró que cuando salió de Perla del Sur dobló a mano izquierda y continuó en marcha pues la luz se encontraba verde, no se detuvo pues "no tenía por qué hacerlo".[120] Testificó además que había carros frente a ella mientras iba transcurriendo, pero no observó carros detenidos.[121] Que mientras iba en transcurso no hubo cambio de luces y el accidente ocurrió mientras se encontraba aproximadamente en el cuarto carril.[122] Testificó que nunca vio el vehículo del Sr. Natalio García Arroyo.[123]

### Ingeniero Otto González Blanco (Perito de la parte demandada)

El Ingeniero Otto González Blanco comenzó testificando que es ingeniero civil, ingeniero estructural e hidráulico y se dedica a la reconstrucción de accidentes.[124] Declaró que de 2007 al 2012 estuvo en la Universidad de Jacksonville tomando su especialidad en reconstrucción de accidentes.[125] Atestiguó que estuvo también en Illinois preparándose en el área de reconstrucción de accidentes en diferentes vertientes, entre ellas accidentes automovilísticos.[126] Que tuvo que tomar una reválida para poder formar parte del *Acreditation Comission for Reconstruction Accident Expert* (A.C.T.A.R.) y esto lo certifica para ser perito.[127] Testificó que es el único puertorriqueño que reside en la isla que tiene dicha acreditación.[128] Que lleva desde los años 80´s como perito de reconstrucción, y a eso se dedica desde los años 2000.[129] Testificó

---

[119] TPO del 20 de abril de 2023 en las págs. 140-141.
[120] TPO del 20 de abril de 2023 en las págs. 166-167.
[121] TPO del 20 de abril de 2023 en las págs. 168-169.
[122] TPO del 20 de abril de 2023 en las págs. 170-171.
[123] TPO del 20 de abril de 2023 en las págs. 172-173.
[124] TPO del 20 de abril de 2023 en las págs. 189-190.
[125] TPO del 20 de abril de 2023 en la pág. 190.
[126] TPO del 20 de abril de 2023 en las págs. 191-193.
[127] *Íd.*
[128] TPO del 20 de abril do  2023 en la pág. 195.
[129] TPO del 20 de abril de 2023 en la pág. 203.

que nunca ha sido rechazado en las áreas de reconstrucción de accidentes ni en las áreas de ingeniería.[130]

Atestiguó que la metodología utilizada en la reconstrucción del accidente que dio lugar este pleito fue revisar toda la evidencia de la policía, partes y terceros, luego realizó un bosquejo de áreas.[131] Al describir el accidente, el perito declaró que se trataba de un accidente sencillo donde dos vehículos impactaron, debido a una secuencia de cambio de luz, en donde uno de estos pasó la luz roja y la otra parte alegó que estaba verde.[132] Que los daños ocurridos a estos vehículos se debieron a la energía del impacto tan reducido.[133] Testificó, además, que los vehículos se redirigieron debido a las fuerzas que crearon en el "*momentum*" que explicó que era la distancia entre la fuerza y el centro de masa haciendo que rotara dinámicamente la unidad.[134] El Ingeniero Otto González Blanco continuó explicando su proceso de metodología en donde consiguió especificaciones sobre los modelos vehiculares, parámetros de aceleración, tiempos y centro de gravedad de los vehículos.[135] Que para poder realizar sus cálculos necesitaba, además de las propiedades de los vehículos, información de la intersección donde ocurrió el accidente, así que obtuvo de parte del Departamento de Obras Públicas en Autoridad de Carreteras una certificación del panel llamado "PLC" que está encargado del control de los semáforos de la Ramal PR-2 y la carretera 585.[136] Atestiguó que tomó fotografías del lugar para levantar data y realizó plantillas en donde se establecieron distancias y los elementos de reconstrucción que se enfocaron en dos parámetros que son los desplazamientos de cada

---

[130] TPO del 20 de abril de 2023 en las págs. 207 y 225.
[131] TPO del 21 de abril de 2023 en las págs. 56-57.
[132] *Íd.*
[133] TPO del 21 de abril de 2023 en la pág. 58.
[134] TPO del 21 de abril de 2023 en las págs. 65-66.
[135] TPO del 21 de abril de 2023 en las págs. 70-71.
[136] TPO del 21 de abril de 2023 en las págs. 71-74.

vehículo al momento del impacto, en términos de velocidades de cada unidad contra los tiempos de cambio del semáforo.[137]

El perito continuó su testimonió explicando los cálculos que realizó respecto al desplazamiento realizado por los dos vehículos hasta llegar al punto de colación y expresó que el vehículo Mistubishi, estando a cuarenta y dos pies desplazados, debió haber visto que la guagua Ford estaba sesenta pies dentro de la intersección.[138] Que según toda su investigación llegó a la conclusión que la guagua Ford Explorer tenía derecho al paso y que la salida del vehículo Mitsubishi fue en destiempo.[139]

Luego, el Ingeniero Otto González Blanco declaró que entre los documentos utilizados para realizar su informe contó con la deposición del Sr. Natalio García Arroyo.[140] Que citó varias páginas de la deposición del demandante en su informe.[141] Atestiguó que no hizo un tracto desde donde la Sra. Karelys Vázquez Ortiz salió hasta donde ocurrió el accidente, se limitó a realizarlo desde cuando la demandada se encontraba en la intersección.[142] Que la velocidad estimada, según sus cálculos, en la cual se dio el impacto fue de 29.62 a 30.88 millas por horas.[143] Testificó que debido a la colación producida entre ambos vehículos provocó un giro que fue de aproximadamente sesenta o sesenta y cinco pies.[144]

Así las cosas, el 20 de junio de 2023 y notificada el 23 de junio de 2023 el TPI emitió una *Sentencia* en la cual declaró **Con Lugar** la demanda en daños y perjuicios y **Sin Lugar** la reconvención.[145] El foro primario razonó, luego de aquilatar la prueba testifical y documental, que la Sra. Karelys Michelle Vázquez Ortiz condujo de

---

[137] TPO del 21 de abril de 2023 en las págs. 76-79.
[138] TPO del 21 de abril de 2023 en las págs. 83-88.
[139] TPO del 21 de abril de 2023 en las págs. 89-92.
[140] TPO del 21 de abril de 2023 en la pág. 104.
[141] TPO del 21 de abril de 2023 en las págs. 127-130.
[142] TPO del 21 de abril de 2023 en la pág. 134.
[143] TPO del 21 de abril de 2023 en las págs. 151-152.
[144] TPO del 21 de abril de 2023 en las págs. 186-187.
[145] Apéndice de la parte demandada-apelante, en el Anejo 1 págs.1-39.

manera negligente causándole daños al Sr. Natalio García Arroyo, mientras conducía el automóvil de su difunto abuelo, Sr. Hipólito Vázquez Saldaña.[146] Añadió, además, que a raíz del accidente el demandante sufrió:

> trauma en el área occipital de la cabeza [sangrando] profusamente, además sufrió lesiones en múltiples partes de su cuerpo destacándose el área cervical para lo cual se recomendó cirugía que este descartó, lumbosacral y ambas rodillas, que recibió intervención quirúrgica artroscópica de la rodilla derecha (Menisectomy) para reparar la rotura del menisco medial.[147]

Inconforme con aludida *Sentencia,* el 7 de julio de 2023 la parte demanda presentó un *Escrito en reconsideración.*[148] El mismo día presentaron otro escrito titulado *Solicitud de determinaciones de hecho.*[149] El 13 de julio de 2023, notificado el 17 de julio del mismo año, el TPI emitió dos resoluciones declarando No Ha Lugar a ambos escritos.[150]

Inconforme con la determinación del foro primario, acude ante nos la parte demandada mediante el presente recurso de *Apelación.* En su escrito, señala la comisión de los siguientes errores:

> **Primer Error**: ERRÓ DE FORMA MANIFIESTA EL TPI AL NO EVALUAR LA PRUEBA OBJETIVA PRESENTADA POR LA PARTE DEMANDADA EN EL JUICIO Y CONTRARIO A LOS HECHOS QUE SURGEN DE ESTA.
>
> **Segundo error**: ERRÓ EL TPI E INCURRIÓ EN ERROR MANIFIESTO AL EVALUAR EL TESTIMONIO DE LA SRTA. VÁZQUEZ Y DEL ING. GÓNZALEZ CONTRARIO A LA PRUEBA PRESENTADA Y AL BALANCE MÁS RACIONAL Y JUSTICIERO DEL CASO.
>
> **Tercer Error**: ERRÓ EL TPI AL CONSIDERAR PRUEBA MÉDICA INADMISIBLE Y OBJETADA OPORTRUNAMENTE CONCEDIENDOLE AL DEMANDANTECOMO RESULTADO DE SU CONSIDERACIÓN DAÑOS POR UNA LESIÓN QUE NO PUEDE SER ATRIBUIBLE CAUSALMENTE AL ACCIDENTE VEHICULAR QUE NOS OCUPA Y POR UNA RECLAMACIÓN PRESCRITA.

---

[146] *Íd.*
[147] *Íd.*
[148] Apéndice de la parte demandada-apelante, en el Anejo 2 págs.40-60.
[149] Apéndice de la parte demandada-apelante, en el Anejo 3 págs.61-76.
[150] Apéndice de la parte demandada-apelante, en el Anejo 4 págs.77-80.

El 15 de abril de 2015 la parte demandante presentó su *Alegato del apelado*. Contando con la comparecencia de ambas partes, procedemos a resolver.

**II.**

### La Responsabilidad Civil Extracontractual

El hoy derogado, pero vigente a los hechos, Artículo 1802 del Código Civil de 1930, 31 LPRA ant. sec. 5141,[151] disponía que todo aquél que por acción u omisión cause un daño a otro vendrá obligado a repararlo, si ha mediado culpa o negligencia. Para poder reclamar daños y perjuicios bajo este artículo el Tribunal Supremo ha expresado que el demandante debe establecer la existencia de estos tres requisitos: (1) la existencia de un daño real; (2) el nexo causal entre daño sufrido y la acción u omisión del demandando; y (3) que el acto u omisión es culposo o negligente. *Pérez et al. v. Lares Medical et al.*, 207 DPR 965, 976 (2021); *López v. Porrata Doria*, 169 DPR 135, 150 (2006).

Respecto al concepto de culpa y negligencia, nuestro más alto foro ha expresado que consiste en la:

> falta del debido cuidado, que a la vez consiste en no anticipar y prever las consecuencias racionales de un acto, o de la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias.[152]

Por otro lado, la omisión genera responsabilidad civil extracontractual siempre y cuando dicha omisión constituya una conducta antijuridica imputable. *Hernández Vélez v. Televicentro*, 168 DPR 803, 812 (2006); *Arroyo López v. E.L.A.*, 126 D.P.R. 682, 686 (1990). Para determinar si se incurrió o no en responsabilidad

---

[151] Véase, Artículo 1815 del Código Civil de 2020, 31 LPRA sec. 11720, el cual dispone, en parte, que "[l]a responsabilidad extracontractual, tanto en su extensión como su naturaleza, se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad. [...]".

[152] *López v. Porrata Doria*, 165 DPR 135, 151 (2006); *Toro Aponte v. E.L.A.*, 142 D.P.R. 464, 473 (1997).

civil por omisión, el Tribunal Supremo ha expresado que deben considerarse los siguientes factores:

> (i) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño y (ii) si de haberse realizado el acto omitido se hubiera evitado el daño.[153]

Nuestro ordenamiento jurídico ha expresado que el deber de indemnizar presupone la existencia de un nexo causal. *Estremera v. Inmobiliaria Rac, Inc.*, 109 D.P.R. 852, 856 (1980). El Tribunal Supremo ha establecido que en Puerto Rico se rige por la doctrina de la causalidad adecuada. *Pérez et al. v. Lares Medical et al.*, supra en la pág. 977; *López v. Porrata Doria*; en la pág. 151. La doctrina de causalidad adecuada presupone que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Pérez et al. v. Lares Medical et al.*, supra en la pág. 977; *López v. Porrata Doria*; en la pág. 151-152. En otras palabras, la cuestión se limita a determinar si la ocurrencia del daño era de esperarse en el curso normal de un suceso o si, por el contrario, este queda fuera del cálculo. *Rivera Jiménez v.  Garrido & Co. Inc.*, 134 DPR 840, 852 (1993).

### *Deferencia Judicial*

En nuestro ordenamiento jurídico es norma reiterada que los jueces y juezas del Tribunal de Primera Instancia están en mejor posición que los foros apelativos para poder aquilatar la prueba presentada por las partes. *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011) citando a *Pueblo v. Miranda Ortiz*, 117 DPR 188, 191 (1986). Debido a esto, los foros superiores le brindamos gran respeto y deferencia a las conclusiones de hecho y apreciación de la prueba hecha por los tribunales de instancia. *Íd.*

---

[153] *Hernández Vélez v. Televicentro*, 168 DPR 803, 812 (2006); *Soc. Gananciales v. G. Padín Co., Inc.*, 117 D.P.R. 94, 106 (1986).

En ausencia de "pasión, prejuicio, parcialidad o error manifiesto" los tribunales apelativos nos abstendremos de intervenir en la apreciación de la prueba hecha por un foro primario. *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006). Respecto a la deferencia brindada en la credibilidad y apreciación de la prueba oral, el Tribunal Supremo ha expresado:

> Hemos señalado que la determinación de credibilidad del tribunal sentenciador debe ser merecedora de gran deferencia por parte de los foros apelativos, por cuanto es el juez de instancia quien —de ordinario— está en mejor posición para aquilatar la prueba testifical desfilada, ya que fue quien oyó y vio declarar a los testigos. Más aún, el juez ante quien declaran los testigos es quien tiene la oportunidad de verlos y observar su manera de declarar, apreciar sus gestos, titubeos, contradicciones y todo su comportamiento mientras declaran. Estos factores van formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. " '[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito.' "[154] (Citas omitidas)

Pese lo anterior, el Tribunal Supremo ha expresado que cuando las conclusiones de hechos estén basadas en prueba pericial o documental los foros apelativos se encuentran en la misma posición que el foro primario para revisarlo. *González Hernández v. González Hernández,* supra en la pág. 777 citando a *Sepúlveda v. Depto. De Salud,* 145 DPR 560, 573 (2011). Debido a esto, los foros revisores tendremos "facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla aunque resulte técnicamente correcta". *Íd.* citas omitidas.

**Testimonio Pericial**

La Regla 702 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, establece que:

> Cuando conocimiento científico, técnico o especializado sea de ayuda para la juzgadora o el juzgador poder entender la prueba o determinar un hecho en

---

[154] *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 67-68 (2009).

controversia, **una persona testigo capacitada como perita** -conforme a la Regla 703- podrá testificar en forma de opiniones o de otra manera. (Énfasis suplido).

El valor probatorio que el Tribunal le dará a dicha prueba presentada dependerá de los factores enlistados en la Regla 702 de Evidencia de Puerto Rico, supra, estos son:

> (a) si el testimonio está basado en hechos o información suficiente;
> (b) si el testimonio es el producto de principios y métodos confiables;
> (c) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso;
> (d) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica;
> (e) las calificaciones o credenciales de la persona testigo; y
> (f) la parcialidad de la persona testigo.
> La admisibilidad del testimonio pericial será determinada por el Tribunal de conformidad con los factores enumerados en la Regla 403.

El Tribunal Supremo ha expresado que para que una persona sea cualificada como perito debe poseer "el conocimiento, la destreza, la experiencia, el adiestramiento o la instrucción suficientes" para calificarlo como una persona experta o perita sobre el tema por el cual prestara su testimonio en corte. *S.L.G. Font Bardón v. Mini-Warehouse*, 179 DPR 322, 342 (2010) citando la Regla 703 (a) de Evidencia de Puerto Rico, 32 LPRA Ap. VI. Respecto a la admisibilidad de la prueba pericial, nuestro más alto foro ha expresado que:

> El juez tiene una amplia discreción con relación a la admisión o exclusión de la prueba pericial. Sus determinaciones deben ser sostenidas a menos que sean claramente erróneas. [...] Si concluye que un testigo no tiene las cualidades requeridas para declarar como perito con relación a la materia que se está investigando, puede excusarlo. [...] En ese caso, de no demostrarse que el juez abusó de su discreción al excluir a un perito, la resolución que emita a tales efectos no puede ser revocada a causa de error. [...] Sin embargo, la discreción del juez no está libre de restricciones. [...] Su ejercicio debe estar fundamentado en principios legales adecuados.[155]

---

[155] *S.L.G. Font Bardón v. Mini-Warehouse*, supra en la pág. 343 citando *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962); *Del Toro v. La Corte Municipal*, 16 D.P.R. 93, 96 (1910); *U.S. v. Lennick*, 18 F.3d 814, 821 (9no Cir. Mont. 1994); *Hawes v. Chua*, 769 A.2d 797, 801 (1997).

*Evaluación y Suficiencia de la prueba*

La Regla 110 de Evidencia de Puerto Rico, 32 LPRA Ap. VI, establece como los juzgadores de los hechos evaluarán la evidencia que les sea presentada. Respecto a esto, la regla versa de la siguiente forma:

**La juzgadora o el juzgador de hechos deberá evaluar la evidencia presentada con el propósito de determinar cuáles hechos han quedado establecidos o demostrados, con sujeción a los principios siguientes**:

(A) El peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes.

(B) La obligación de presentar evidencia primeramente recae sobre la parte que sostiene la afirmativa en el asunto en controversia.

(C) **Para establecer un hecho, no se exige aquel grado de prueba que, excluyendo posibilidad de error, produzca absoluta certeza**.

(D) **La evidencia directa de una persona testigo que merezca entero crédito es prueba suficiente de cualquier hecho, salvo que otra cosa se disponga por ley**.

(E) La juzgadora o el juzgador de hechos no tiene la obligación de decidir de acuerdo con las declaraciones de cualquier cantidad de testigos que no le convenzan contra un número menor u otra evidencia que le resulte más convincente.

(F) **En los casos civiles, la decisión de la juzgadora o del juzgador se hará mediante la preponderancia de la prueba a base de criterios de probabilidad, a menos que exista disposición al contrario.** En los casos criminales, la culpabilidad de la persona acusada debe ser establecida más allá de duda razonable.

(G) Cuando pareciere que una parte, teniendo disponible una prueba más firme y satisfactoria, ofrece una más débil y menos satisfactoria, la evidencia ofrecida deberá considerarse con sospecha.

(H) **Cualquier hecho en controversia es susceptible de ser demostrado mediante evidencia directa o mediante evidencia indirecta o circunstancial.** Evidencia directa es aquélla que prueba el hecho en controversia sin que medie inferencia o presunción alguna y que, de ser cierta, demuestra el hecho de modo concluyente. Evidencia indirecta o circunstancial es aquélla que tiende a demostrar el hecho en controversia probando otro distinto, del cual por s[í] o, en unión a

otros hechos ya establecidos, puede razonablemente inferirse el hecho en controversia. (Énfasis suplido)

**III.**

La parte apelante nos señala que erró el foro primario al no evaluar la prueba objetiva presentada por esta en el juicio siendo los hechos concluidos por el TPI contrarios a esta prueba. No le asiste razón, veamos.

Somos del criterio que, como norma general, los Jueces y Juezas de lo foros primarios se encuentran mejor posición para aquilatar la prueba presentada y es por esto que los foros apelativos damos deferencia y respeto a aludida apreciación de la prueba.[156] No pese a lo anterior, se ha reconocido que cuando las conclusiones de hechos fueron realizadas basadas en prueba pericial o documental, nos encontramos en la misma posición que los foros primarios en la apreciación de la prueba.[157] En nuestro ordenamiento jurídico en los casos civiles la decisión que puede tomar un juzgador de hechos será mediante preponderancia de prueba.[158]

En el caso ante nuestra consideración la parte apelante presentó como prueba un Informe Pericial hecho por el Ingeniero Otto González Blanco que incluye, entre otras cosas, la Programación de Semáforos de Ramal PR-2 Intersección PR-585 y Ave. Eduardo Ruberté Municipio del Municipio de Ponce.[159] Luego de revisado aludido informe, el expediente judicial y las transcripciones de prueba oral llegamos a la conclusión de que no erró el TPI al evaluar la prueba objetiva presentada por la parte apelante. Una revisión de tales documentos nos lleva a la misma

---

[156] Véase *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011) citando a *Pueblo v. Miranda Ortiz*, 117 DPR 188, 191 (1986).
[157] Véase *Íd.* en la pág. 777 citando a *Sepúlveda v. Depto. De Salud*, 145 DPR 560, 573 (2011).
[158] Véase Regla 110 (F) de Evidencia de Puerto Rico, 32 LPRA Ap. VI.
[159] Véase Apéndice de la parte demandada-apelante, en el Anejo 20 págs. 150-250.

conclusión hecha por el TPI, que la teoría y versión vertida por la parte aquí apelante es insostenible con toda la prueba presentada. Además, el hecho de que el perito Ingeniero Otto González Blanco hubiese utilizado partes de la deposición del apelado de forma acomodaticia, contrario a lo que parte apelada atestiguó en juicio y surge directamente de su deposición[160], nos lleva a pensar que la aludida prueba "objetiva" presentada por la parte apelante estaba parcializada.[161] Por lo que damos total deferencia al foro primario, y no le asiste razón a la parte apelante en este señalamiento de error.

En segundo lugar, la parte apelante nos señala que erró el TPI al evaluar el testimonio de la señora Karelys Vázquez Ortiz y el perito Ingeniero Otto González Blanco, siendo esto contrario a la prueba presentada y al balance "más racional y justiciero" del caso de marras. No le asiste razón, veamos.

Como anteriormente mencionamos, como norma general, **los Jueces y Juezas de los foros primarios se encuentran mejor posición para aquilatar la prueba presentada y es por esto que los foros apelativos damos deferencia y respeto a aludida apreciación de la prueba**.[162] Esto cobra mayor fuerza cuando se trata de la **credibilidad y apreciación de la prueba oral** hecha en el TPI, por eso en **ausencia de pasión, prejuicio, parcialidad o error manifiesto daremos total deferencia** a la aludida credibilidad y apreciación de la prueba oral hecha por el foro primario.[163]

Luego de revisado las transcripciones de prueba oral llegamos a la conclusión de que, al no existir prejuicio, parcialidad, pasión o error manifiesto por parte del TPI, no le asiste razón a la parte

---

[160] Véase TPO del 17 de abril de 2023; Apéndice de la parte demandada-apelante, en el Anejo 20 págs. 214-220.
[161] Véase *Íd.*; Apéndice de la parte demandada-apelante, en el Anejo 1 págs.1-39.
[162] Véase *González Hernández v. González Hernández*, supra, pág. 776, citando a *Pueblo v. Miranda Ortiz*, 117 DPR 188, 191 (1986).
[163] Véase *Rodríguez v. Urban Brands*, 167 DPR 509, 522 (2006).

apelante, por eso damos completa deferencia en la apreciación de la prueba oral hecha por el foro primario respecto a los testimonios de la Sra. Karelys Vázquez Ortiz y el perito Ingeniero Otto González Blanco.[164]

Finalmente, la parte apelante nos señala que erró el foro primario al considerar prueba médica "inadmisible" y objetada por esta, concediéndole a la parte apelada compensación por daños por una lesión que no puede atribuírsele causalmente al accidente vehicular y una reclamación prescrita. La parte apelante alegó que el TPI compensó como parte de los daños ocurridos al apelado por el accidente una artroscopia en su rodilla mediante prueba objetada e inadmisible. La parte apelante arguyó, además, que el foro primario concedió aludida compensación basándose récords del Dr. José A. Martino, Dr. Javier Serra y Dr. Carlos Colón Gómez que no fueron autenticados respecto a su contenido y sin contar con el testimonio en el juicio de estos. No le asiste razón, veamos.

Luego de revisar el expediente judicial, los escritos presentados y las transcripciones de prueba oral, llegamos a la conclusión que no erró el foro primario al conceder compensación por el daño sufrido en la rodilla por el apelado, pues se sustenta de la prueba presentada en el juicio. Surge del expediente judicial, que desde la presentación de la primera Demanda, el 23 de septiembre de 2015, el Sr. Natalio García Arroyo alegó que **sufrió trauma** en diferentes partes del cuerpo, **incluyendo ambas rodillas**.[165] Surge, además, de las transcripciones de prueba oral que el testimonio vertido por la Dra. Digna Rivera Roldán, doctora generalista del apelado, que el Sr. Natalio García Arroyo se quejó de dolor de rodilla derecha en dos ocasiones en el año 2016.[166] Que del testimonio

---

[164] Véase TPO del 20 de abril de 2023 en las págs. 129-183; 189-240; TPO del 21 de abril de 2023 en las págs. 51-202.
[165] Véase Apéndice de la parte demandada-apelante, en el Anejo 5 págs.81-84.
[166] Véase TPO del 17 de abril de 2023 en las págs. 265-272.

vertido por el perito Dr. José Raúl Ortiz Rubio, **quien realizó un informe tomando en consideración** los **documentos** relacionados a la reclamación del Seguro Social en el 2008 **incluyendo los expedientes de los doctores que han atendido al Sr. Natalio García Arroyo luego del 4 de mayo de 2015** y los expedientes del Hospital de Damas y de Centro Médico, surge que el Sr. Natalio García Arroyo fue referido al Dr. Carlos Colón por un dolor en la rodilla por lo que fue intervenido en su rodilla mediante artroscopía derecha de carácter ambulatoria.[167] Teniendo todo esto en consideración nos queda claro que no erró el foro primario al conceder la compensación por los daños ocurridos en la rodilla del apelado, pues surge que desde el primer escrito presentado que el Sr. Natalio García Arroyo obtuvo daños y quedado demostrado por los testimonios del apelado, la Dra. Digna Rivera Roldán y el Dr. José Raúl Ortiz Rubio.

Cabe destacar, además, que surge de las transcripciones de prueba oral del juicio celebrado en su fondo, que todos los galenos que testificaron en el juicio **lo hicieron a base de su propio expediente**, **exceptuando el Dr. José Raúl Ortiz Rubio quien al declarar sobre su informe comentó sobre los expedientes utilizados para llegar a su conclusión** de que, debido a la colisión de 4 de mayo de 20215, el señor Natalio García Arroyo empeoró su cuadro de salud obteniendo aproximadamente una incapacidad total de cinco porciento impedimento en todas sus funciones fisiológicas generales permanente, por lo que no le asiste razón a la parte apelante cuando alega que el foro primario llegó a sus conclusiones mediando prueba medica inadmisible.[168]

---

[167] Véase TPO del 19 de abril de 2023 en las págs. 102;139-152.
[168] Véase TPO Véase TPO del 17 de abril de 2023; TPO del 19 de abril de 2023.

**IV.**

Por los fundamentos que nos anteceden, confirmamos la *Sentencia* emitida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones